THE STATE v. GEORGE DUKE.

1. DEADLY WEAPONS.—INDICTMENT FOR CARRYING.   An indictment for unlawfully carrying deadly weapons, under the Act of April 22, 1871, should negative that the weapon was carried by a person, or at a place, or under circumstances allowed by the statute.
2. SAME. An indictment for charging that defendant did unlawfully carry on his person one pistol, known as a six-shooter," does not charge an offense against the law.
3. CONSTITUTIONAL LAW. The provisos in the act being essential parts of the description of the offense, a statute authorizing their omission would be in violation of the Constitutional right to be exempt from answering any criminal charge but upon indictment or information.

APPEAL from Caldwell.  Tried below before the Hon. Henry Maney.

*Geo. Clark*, for State.

No brief for appellee.

GOULD, J.  This is an appeal by the State from the judgment of the District Court sustaining a motion to set aside, as insufficient, an indictment, charging that George Duke did, on the 23d day of December, 1871, in said Caldwell county, " un-" lawfully carry on his person one pistol, known as a six-" shooter."  The first and second Sections of the " Act to reg-" ulate the keeping and bearing of deadly weapons," passed April 11, 1871, are as follows:

" Any person carrying on or about his person, saddle, or in " his saddle-bags, any pistol, dirk, dagger, slung-shot, sword-" cane, spear, brass knuckles, bowie knife, or any other kind of " knife, manufactured or sold, for the purpose of offense or de-".fense, unless he has reasonable grounds for fearing an unlaw-" ful attack on his person, and that such ground of attack shall " be immediate and pressing; or unless having or carrying the " same on or about his person for the lawful defense of the " State, as a militiaman in actual service, or as a peace officer " or policeman, shall be guilty of a misdemeanor, and on con-" viction thereof, shall, for the first offense, be punished by fine " of not less than twenty-five nor more than one hundred dol-" lars, and shall forfeit to the county the weapon or weapons " so found on or about his person; and for every subsequent " offense may, in addition to such fine and forfeiture, be impris-" oned in the county jail for a term not exceeding sixty days; " and in every case of fine under this section, the fines imposed " and collected shall go into the treasury of the county in which " they may have been imposed: Provided, That this section " shall not be so construed as to prohibit any person from keep-" ing or having arms on his or her own premises, or at his or " her own place of business, nor to prohibit sheriffs or other

" revenue officers, and other civil officers, from keeping or
" having arms, while engaged in the discharge of their official
" duties, nor to prohibit persons traveling in the State from
" keeping or carrying arms with their baggage: Provided fur-
" ther, that members of the Legislature shall not be included
" under the term civil officers, as used in this. Act."

" SECTION 2. Any person charged under the first Section of
" this Act, who may offer to prove by way of defense, that he
" was in danger of an attack on his person, or unlawful inter-
" ference with his property, shall be required to show that such
" danger was immediate and pressing, and was of such a nature
" as to alarm a person of ordinary courage; and that the arms
" so carried were borne openly, and not concealed beneath the
" clothing; and if it shall appear that this danger had its origin
" in a difficulty first commenced by the accused, it shall not be
" considered a legal defense."

The objection made to the indictment was that it charged no
offense known to the laws of the State, bringing up the ques-
tion of the constitutionality of this Act, and also of the suffi-
ciency of the indictment under the statute, if held valid.

Article II. of the amendments to the Constitution of the
United States declares that " A well regulated militia being
" necessary to the security of a free State, the right of the peo-
" ple to keep and bear arms shall not be infringed." That this
and the other amendments adopted at the same time, were in-
tended to be limitations on the power of the government of the
thirteen States, and not on the powers of the State governments,
has been long regarded as the settled construction in the Su-
preme Court of the United States. Whilst there has been no
decision of that court to that effect, as to the clause under con-
sideration, the opinion of Chief-Justice Marshall in Borran v.
City of Baltimore (7 Peters, 247), applies to this, as well as the
5th amendment, which he was then considering. So far as it
can be done in that way, it may be said that the frequent
recognitions which this construction of these amendments has
received in that court, have given it the force of settled law.

(Livingston's Lessee *v.* Moore, 7 Pet., 551; Fox *v.* Ohio, 5 Howard, 434; Smith *v.* Maryland, 18 Howard, 71; Prussor *v.* Commonwealth, 5 Wallace, 475; Slaughter-house Cases, 16 Wallace, 77–82; Bartemeyer *v.* Iowa, 18 Wallace, 140; and see Andrews *v.* The State, 3 Heiskell, 166.)

Following this construction by that tribunal, whose decision on the question would be authoritative, we pass to the consideration of the 13th Section of the Bill of Rights in the Constitution of the State; which is as follows : " Every person shall " have the right to keep and bear arms in the lawful defense " of himself or the State, under such regulations as the Legisla- " ture may prescribe." The question presented by the case before us is, does that part of the Act making it an offense to carry a pistol, except in the cases therein specified, violate this section of the Bill of Rights? In English *v.* The State (35 Texas, 478), this court held that it did not. We acquiesce in the decision, but do not adopt the opinion expressed that the word "arms," in the Bill of Rights, refers only to the arms of a militiaman or soldier. Similar clauses in the Constitutions of other States have generally been construed by the courts as using the word *arms* in a more comprehensive sense. (Bliss *v.* Cane, 2 Littell, 70; The State *v.* Reid, 1 Ala., 612; The State *v.* Mitchell, 3 Blachf., 229; Nunn *v.* The State, 1 Kelly, 243; The State *v.* Buzzard, 4 Ark. And see Cockrum *v.* The State, 24 Texas, 394.)

There is no recital of the necessity of a well-regulated militia, as there is in the corresponding clause in the Constitution of the United States. The arms which every person is secured the right to keep and bear (in the defense of himself or the State, subject to legislative regulation), must be such arms as are commonly kept, according to the customs of the people, and are appropriate for open and manly use in self-defense, as well as such as are proper for the defense of the State. If this does not include the double-barreled shot-gun, the huntsman's rifle, and such pistols at least as are not adapted to being carried concealed, then the only arms which the great mass of the

people of the State have, are not under constitutional protection. But, beyond question, the dragoon or holster pistol is part of the arms of a soldier in that branch of the service. (Coldwell v. The State, 3 Heiskell, 166, and English v. The State, 35 Texas, 476.) Regarding, then, some kinds of pistols as within the meaning of the word, we are of the opinion that the Act in question is nothing more than a legitimate and highly proper regulation of their use. We are not called on to lay down general rules, prescribing how far legislative regulation may be extended, without trespassing on the constitutional rights of the citizen. The question for our decision is the constitutionality of the Act under which this indictment was proved. It undertakes to regulate the place where, and the circumstances under which, a pistol may be carried; and in doing so, it appears to have respected the right to carry a pistol openly when needed for self-defense or in the public service, and the right to have one at the home or place of business. We hold that the statute under consideration is valid, and that to carry a pistol under circumstances where it is forbidden by the statute, is a violation of the criminal law of the State.

But the indictment in this case fails to charge a violation of the statute.

The rule regulating indictments for violation of statutes, which is believed to be of universal acceptance, may be stated to be, " when an offense is created by statute, and there is an " exception in the enacting clause, the indictment must nega- " tive the exception." (1 Bishop's Cr. Pr., Sec. 382, note 3, Sec. 376; 1 Wharton's Am. Cr. Law, Sec. 379 and ref.; (Vornsner v. Omrod, 6 Barn. & Cres., 430; Com. v. Hart, 11 Cushing, 130; United States v. Cook, 17 Wallace, 173; Hewitt v. The State, 25 Texas, 722.)

The reason of this rule is that such exceptions constitute a part of the description of the offense, and unless they are negatived no offense is stated. The indictment must state such facts as constitute a crime. (Bish. on Stat. Crimes, Sections 369–70–71.)

"If any one material fact or circumstance be omitted, the "indictment will be bad." (1 Arch. Cr. Pr., 56.) "No indict-"ment is sufficient which alleges an act or omission in itself "innocent, unless it proceed to disclose circumstances which "render such act or omission illegal." (Starkie's Cr. Pl., 171, as cited, 1 Bish. Cr. Pr., Section 380.)

The Legislature has not attempted to make the carrying of a pistol of itself an offense. The enacting clause itself excepts certain officers in actual service, and any one having reasonable grounds to fear an attack. Tested by the rule above stated, the indictment is defective. But in truth, not only are these exceptions descriptive of the offense, but the provisos not perhaps embraced in the enacting clause, are equally parts of that description. If the latter could be regarded as properly provisos, the place they occupy would make it unnecessary to negative them. But in truth they are all, those introduced by the word *unless*, and those by the word *provided*, in legal effect qualifications of the enacting clause. It is only by virtue of them that the act becomes a regulation instead of a prohibition. They are, in fact, constituent elements of the offense, just as much as if the statute read: "Whoever, not being a peace "officer or policeman, and not having reasonable grounds to "fear an attack, shall, at any place other than his own premises "or place of business, carry on or about his person any pistol, "shall be guilty of a misdemeanor," etc. The statute undertakes to regulate the carrying of pistols. The offense which it creates consists in the violation of the regulations prescribed. If the enacting clause and the qualifications were all separated by a proviso, or were in different sections, connected only by a reference in the first section to exceptions specified in a subsequent section, yet inasmuch as the qualifications or regulations are essential to the validity of the Act, they should be negatived in the indictment. (See 1 Bish. Cr. Pr., Sec. 380; Mills v. Kennedy, 1 Bailey, 17; The State v. Alley, 29 Ib., 60; The State v. Miller, 24 Conn., 522.)

Regarding the form and place which these regulations occupy

in this very loosely drawn statute, as not affecting their real nature, or essential parts of the description of the offense, we hold, that it was necessary that the indictment should substantially negative that the pistol was carried by a person, or at a place, or under circumstances allowed by the statute. The case of Jenkins v. The State (34 Texas, 638), in which a majority of the court held differently, may be regarded as overruled. In regard to the form of these averments, it is held that whatever amounts to a substantial negative is sufficient. (The State v. Keen, 34 Me., 500; Com. v. Balard, 12 Gray, 132; Bish. Cr. Pr., 211, Sec. 384.) For example, the affirmative averment, that a pistol was carried on the person, would, we think, sufficiently negative that it was carried with his baggage by one traveling in the State. (Bish. Cr. Pr., Sec. 384, and ref.) Though the words "willfully and unlawfully" are clearly insufficient, it is not necessary to follow the precise language of the statute. (See 1 Wharton's Cr. Law, Sec. 379 and 402.)

In arriving at the conclusion stated as to the requisites of an indictment, we have not overlooked that Article of the Code of Criminal Procedure which says: "It is not necessary to state, "in an indictment, anything which it is not necessary to "prove." (Paschal's Digest, Article 2864.) That the defendant was in no danger of an attack, and perhaps that he was not a peace officer, being averments of facts peculiarly within defendant's knowledge, so that he could have no difficulty in showing the truth, no proof of such averments on the part of the State would be required. In the absence of proof, the presumption would be against the existence of facts so exceptional in their nature.

But being essential parts of the description of the offense, a statute authorizing their omission would be in violation of the Constitutional right to be exempt from answering "any "criminal charge but on indictment or information," and of the guaranty that "No citizen of the State shall be deprived of "life, liberty, property, privileges, outlawed, exiled, or in any

" manner disfranchised, except by due course of the law of the " land." (Bill of Rights, Sections 8 and 16.)

In Hewitt v. The State (25 Texas, 722), it was held that these Constitutional provisions place it beyond the power of the Legislature to dispense with the statement in the indictment, of that which is essential to the description of the offense. The Legislature had attempted to dispense with the averment, in an indictment for selling liquor, that it was sold " without having " obtained a license therefor;" but the court held that a conviction under such an indictment would not be by " due course " of law," notwithstanding it was settled that no proof to support it was required, and that the indictment must nevertheless contain the averment. In addition to the authorities cited in that case, the following cases fully support it: The State v. Learned, 47 Me., 426; Murphy v. The State, 24 Miss., 390; 28 Miss., 637; Norris v. The State, 33 Miss., 373; Niles v. The State, 24 Ala., 672.

The indictment was properly set aside as defective, and the judgment of the District Court is affirmed.

Affirmed.