## AL. WILLIAMS vs. THE STATE.

COURT OF APPEALS, AUSTIN TERM, 1882.

*Indictment—Theft—Necessary elements of—Unconstitutionality of the "Act to prescribe the requisites of indictments in certain cases."*—An indictment for theft which omits to charge the elements of the offense as defined by the Penal Code is substantially and fatally defective.

Whatever was the meaning and scope of the word "indictment" at the time of the adoption of the Bill of Rights must be held to have the same meaning in the Bill of Rights, and it is beyond the power of the Legislature to make that a good indictment which does not substantially come within the de

finition of an indictment as understood and used by the framers of the Constitution.

The form of indictment for theft, prescribed under the act above referred to, is repugnant to the Constitution, and a defendant who has been tried upon such an indictment has not been tried "by due course of the law of the land."

Appeal from Freestone county.—Opinion by Willson, J.—The indictment in this case is as follows: "In the name and by the authority of the State of Texas, the grand jury of Freestone county, Texas, present in the District Court of Freestone county, that about the third day of January, A. D. 1881, in Freestone county, Texas, Al. Williams did fraudulently take, steal, and carry away four hogs, of the value each of four dollars ($4.00), from A. L. Williams, contrary to law, and against the peace and dignity of the State.   ·   J. B. CASEY,

"Foreman of the Grand Jury."

This indictment omits to charge the following elements of the offense of theft, as defined in article 724 of the Penal Code, viz: (1) The ownership of the property; (2) that it was taken without the consent of the owner; (3) that it was taken with intent to deprive the owner of the value of the same; and (4), with intent to appropriate it to the use and benefit of the person taking it. These omissions, or any one of them, would render the indictment substantially and fatally defective under all the previous decisions of this court, and of the Supreme Court of this State, upon this subject. (Marshall vs. The State, 31 Texas, 471; State vs. Sherlock, 26 Texas, 106; Ridgway vs. State, 41 Texas, 231; Walls vs. The State, 6 Ct. App., 263.)

But it is contended that this indictment is sufficient under the act entitled "An act to prescribe the requisites of indictments in certain cases," approved March 26, 1881. (General Laws Seventeenth Legislature, chap. 57, page 60.) That act prescribes a form for the offense of theft as follows: "A B did steal a horse from C D;" or, "A B did steal a watch of the value of fifty dollars from C D," and provides that such, or an analogous form, shall be sufficient. (Sec. 11 of said act.)

The indictment before us would unquestionably be sufficient under the form prescribed by this statute; but here the question arises, is the form itself valid? Is it not repugnant to the Constitution? This is a serious question, and one which we approach with hesitation. It is a delicate and solemn act in a court to declare

unconstitutional on act of a co-ordinate branch of the government, but the duty to do this in a proper case cannot be properly declined. In the case before us the constitutionality of the prescribed form under which this indictment would be held good is directly raised, and must be passed upon. If the form is a valid one, this indictment is valid. If the form is not valid, the indictment is fatally defective.

Our organic law provides that "no person shall be held to answer for a criminal offense, unless on indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment otherwise than in the penitentiary," etc. (Bill of Rights, sec. 10.) The case before us is one which might have been presented by in formation, being a misdemeanor, but, being presented by indictment, thes ame rules will apply to it that would govern were it a felony.

Now the question is, what meaning and scope are we to give to the provision quoted? What is meant by the word "indictment?" This word had a well known legal signification at the time it was thus used. We must, therefore, conclude that it was thus used understandingly and in its well known legal sense. What, then, was this legal signification? We will quote some definitions of the term:

"This word, indictment, is said to be derived from the old French word *indicter*, which signifies to *indicate, to show* or *point out*. Its object is to indicate the offense charged against the accused." (Bouviers' Law Dictionary, title "Indictment.")

"It must be framed with sufficient certainty. For this purpose, the charge must contain a description of the crime or misdemeanor of which the defendant is accused, and statement of the facts by which it is constituted, so as to identify the accusation." (Ibid.)

It is a general rule, to which there are but a few exceptions, "that all the material facts and circumstances comprised in the definition of the offense" must be stated. "If any one material fact or circumstance be omitted, the indictment will be bad." (Archibald's Crim. Pl. and Prac., 85.)

"An indictment is a written accusation on oath by at least twelve of a grand jury, against a person named therein, of a crime which it defines, to be carried into court, and there made of record." (1 Bish. Cr. Pro., sec. 131.)

"The indictment must show on its face that it has been found by competent authority, in accordance with the requirements of law,

and that a person mentioned therein has done, within the jurisdiction of the indicators, such and such particular acts, at a specified time, which acts so done constitute what the court can see as a question of law to be a crime, etc." (1 Bish. Cr. Pro., sec. 135.)

"An indictment is the written statement of a grand jury, accusing a person therein named of some act or omission which, by law, is declared to be an offense." (C. C. P., 419.)

Chief Justice Roberts, in Hewitt vs. The State, 25 Texas, 722, quotes the above definition from our Code, and says: "At the adoption of our Constitution, and for a century previously, both in England and America, this is what was understood as constituting an indictment. And again, he says, in the same opinion, "When an act is made the subject of a criminal charge, the constitutional provision requiring an indictment or information is at once brought into active force in favor of those who are accused of and prosecuted for said act, and if an indictment be preferred, it must be such an one as the framers of the Constitution contemplated."

In The State vs. Duke, 42 Texas, 455, Gould, Justice, delivering the opinion of the court, cites and approves the case of Hewitt vs. The State, and says that in that case it was held to be beyond the power of the Legislature to dispense with the statement in the indictment of that which is essential to the description of the offense. He further says, that a statute authorizing the omission of essential parts of the description of an offense would be in violation of the Constitution. In support of the opinions in Hewitt vs. The State, and The State vs. Duke, the following authorities are cited, viz.: The People vs. Toynbee, 2 Parker's Cr. R. (N. Y.), 329; Wynehamer vs. The People, Id., 421; The People vs. Toynbee, Id., 491; The State vs. Learned, 47 Me., 426; Murphy vs. The State, 24 Miss., 390; Norris vs. The State, 33 Miss., 373; Niles vs. The State, 24 Ala., 672. In addition to the above cited authorities, we find the same principle maintained in other cases.

We think it clear from these authorities that the meaning of the word "indictment," in the Bill of Rights, requires that it should state the essential acts or omissions which constitute the offense with which the party is accused; it must charge explicitly all that is essential to constitute the offense, and cannot be aided by intendments. A statement of a legal result or conclusion of law will not be sufficient; the facts constituting the crime must be set forth,

2D

that the conclusion of law may be arrived at from the facts so stated. (Bac. Abr., Indictment, G. I.)

If such then was the meaning and scope of an indictment at the time of the adoption of the Bill of Rights, we must hold that it has the same meaning in the Bill of Rights, and that it is beyond the power of Legislature to make that a good indictment which does not substantially come within the definition of an indictment as understood and used by the framers of the Constitution.

Does the indictment in question, or the form prescribed by the act of Legislature, which we have quoted, come within the meaning of an "indictment" as understood and used in the Bill of Rights? We think not. It charges no facts, acts or omissions constituting the offense of theft, as defined and described in our Code. It simply charges that the defendant "did steal, take and carry away." The word "steal" is a legal result of facts—a mere conclusion of law. The Penal Code, article 739, provides, "The words 'steal' or 'stolen,' when used in this Code in reference to the acquisition of property included property acquired by theft." Is the indictment aided by the provision? We think not. Suppose the allegation was that A. B. did commit theft of the horse of C. D., would this not be simply charging a conclusion of law? Would it be sufficient in an indictment for murder to charge that A. B. did murder C. D., or in an indictment for arson to say that A. B. did commit arson on the house of C. D.? Surely it would not. Then upon what principle or authority could it be held that it would be sufficient to charge in theft that A. B. did steal a horse from C. D.?

It is the opinion of this court that the indictment in this case is fatally defective, and that the form of indictment for theft prescribed in the act of the Legislature hereinbefore quoted, is repugnant to the Constitution, and that a defendant who has been tried upon such an indictment has not been tried by due course of the law of the land. (Bill of Rights, section 19.) The judgment is, therefore, reversed, and the prosecution dismissed.