PEOPLE OF PORTO RICO, Plaintiff and Appellee, v. FRANCISCO RIVERA, Defendant and Appellant.

No. 2687. Argued March 10, 1926.—Decided June 3, 1926.

*E. Martínez Avilés* for the appellant. *José E. Figueras, Fiscal,* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

The pertinent part of the information filed by the District Attorney of Arecibo reads as follows:

"The said Francisco Rivera, on or about July 5, 1925, and in the ward of Abra-Honda of Camuy, P. R., which forms a part of the Judicial District of Arecibo, P. R., illegally and wilfully carried a *machete,* an instrument with which bodily injury may be caused."

Andrés H. Román, Bonifacio Ramos and Luis La Roy testified at the trial.

The first, a policeman, said that he had knowledge of a quarrel between the defendant and Bonifacio Ramos and went to the former's house and took the *machete* which was handed to him by the defendant's wife. Also that the de-

fendant said to him later that he was coming from his work and had a quarrel with Ramos, and that the defendant recognized the arm.

Ramos testified that he lived in Barahona of Camuy; that on the night of June 5th the defendant arrived at his home and in attempting to arrange about certain work they had a quarrel and that the defendant had with him a *machete*.

La Roy testified that on June 5th he was at the home of Ramos; that he found the defendant there; that Ramos and the defendant had a quarrel and went out of the house; that the defendant wounded Ramos with a *machete* which he had, it being about two feet long. He recognized it as being the one seized by the policeman.

After the prosecution had rested the defense moved for nonsuit on the ground that the prosecution had failed to prove its case, inasmuch as the arm had not been taken from the defendant, but from his wife in his own home. The motion was overruled and the court found the defendant guilty, sentencing him to thirty-five days in jail.

The defendant appealed. He contends that the information is insufficient because a *machete* is a farming implement and it is not alleged that it was not being carried when seized by reason of the occupation or employment of Rivera. The appellant cites subdivision 1 of section 5 of Act No. 14 of 1924, which reads as follows:

"Sec. 5.—That the provisions of this Act shall not be applicable—

"1. To the carrying of implements, tools and instruments pertaining to the arts, professions, trades, and occupations or sports when carried by reason or on occasion thereof."

The Act of 1905, amended in 1908 (Comp. 5994), and again in 1914, in specifying the arms prohibited mentioned among them the *machete*, and according to the jurisprudence established in the case of *People* v. *Cruz*, 34 P.R.R. 305, the *machete* must continue to be considered a prohibited arm.

There is no doubt that the *machete* is primarily a farming

implement and that no crime is committed when it is carried by a person for farming purposes, but the history of many crimes in Porto Rico and of the war of independence of Cuba shows that it is also a terrible arm for offense and defense. The Legislature justly cleared the situation by providing the exception contained in section 5 of Act No. 14 of 1924, but that does not require that the exception be excluded by an express averment in the information. The exception is a matter of defense and should be pleaded as such.

As the Act of 1905 prohibiting the carrying of arms was taken from Texas, it seems well to transcribe the following from the Supplement to Willson's Texas Criminal Statutes by W. H. Herron, page 121:

"2.—INDICTMENT UNDER SECTION 338.—In conformity with the original act the exceptions comprised in section 339 were included in the enacting clause of the act, and it has been held that it was necessary to negative in the indictment, either directly or by necessary inference, each one of the said exceptions. S. v. Duke, 42 Tex. 455; Smith v. S. Id. 464; S. v. Clayton, 43 Tex. 410; Woodward v. S. 5 App. 296; Leatherwood v. S. (?) App. 244. In revising the Code the exceptions were eliminated from the enacting clause of the act and put separately into section 339, and since that change it has been held unnecessary to negative any of the said exceptions either by pleading or by evidence. Lewis v. S. 7 App. 567; Zallner v. S. 15 App. 23." (Retranslation.)

In the case of the *United States* v. *Cook*, 84 U. S. 168, 21 L. Ed. 538, the following appears:

"Commentators and judges have sometimes been led into error by supposing that the words 'enacting clause,' as frequently employed, mean the section of the statute defining the offence, as contradistinguished from a subsequent section in the same statute, which is a misapprehension of the term, as the only real question in the case is whether the exception is so incorporated with the substance of the clause defining the offence as to constitute a material part of the description of the acts, omission, or other ingredients which constitute the offence. Such an offence must be accurately and clearly described, and if the exception is so incorporated with the clause de-

scribing the offence that it becomes in fact a part of the description, then it cannot be omitted in the pleading, but if it is not so incorporated with the clause defining the offence as to become a material part of the definition of the offence, then it is matter of defence and must be shown by the other party, though it be in the same section or even in the succeeding sentence.''

. . The appellant also contends that the jurisdiction of the court was not proved, because the evidence did not. show the location of the defendant's house where the arm was seized and therefore the place of the commission of the crime.

■ The arm was seized on the day after the quarrel and it is not the seizure of the arm that determines the commission of the crime, but the fact of its having been carried by the defendant, as he must necessarily have carried it on the night before when he assaulted his adversary with it outside of the house of Ramos, and the evidence shows that Ramos' house is located within the municipality of Camuy of the judicial district of Arecibo

The judgment appealed from must be affirmed.

Mr. Justice Wolf dissented.

DISSENTING OPINION OF MR. JUSTICE WOLF.

The appeal involves two questions. 1st, whether in a prosecution for carrying a prohibited weapon the charge that the defendant was voluntarily and unlawfully carrying a *machete* sufficiently describes an offense, and 2nd, whether, supposing the information good, there was sufficient evidence to show that the *machete* was in fact being carried in a manner prohibited by law. The *Fiscal* suggests a reversal on the first ground.

Act No. 14 of June 25, 1924, provides:

"Section 1.—That any person unlawfully carrying any arm or instrument with which bodily injury may be caused, shall be punished by imprisonment for a term of from one to six months.''

What were ''arms'' was not specifically set forth in the.

said act, but we held in *People* v. *Cruz,* 34 P.R.R. 305, that the word "arm" could only refer to instruments destined to offense and defense, as they were set forth in the Act of 1905, Compilation, 5994; that instruments similar to those mentioned therein could only have been intended and that a rawhide was not primarily used as a weapon of offense and defense, but only for the punishment of animals. The essential matter decided was that a rawhide was not a prohibited weapon, because its primary use was not for purposes of offense and defense. Neither in Porto Rico is a *machete.*

It may not be questioned that in form, in origin and in possibilities a *machete* is a weapon and a dangerous one, but it also is unquestioned that a *machete* in Porto Rico is universally carried in the country for cutting and hacking purposes and that generally it is borne innocently.

The decision in the *Cruz Case, supra,* was referring to the weapons used for offense and defense mentioned in the Act of 1905 as being the standard from which to judge of the nature of an instrument. Let us see what the Act of 1905 actually said:

"Sec. 1.—If any person in Porto Rico, shall carry on or about his person, saddle, saddle-bags or panniers, any pistol, dirk, dagger, sling shot, sword, sword cane, cudgel, spear, or knuckles, made of any metal or any hard substance, bowie knife, or any other knife, manufactured or sold for purposes of offense, or defense, or any *machete,* he shall be punished by a fine of not less than five dollars nor more than fifty dollars, or by imprisonment not less than ten days nor more than sixty days, or both such fine and imprisonment.; and during the time of such imprisonment, such offender may be put to work upon any public works in the municipality in which the offense was committed."

The words "manufactured or sold for purposes of offense cr defense," manifestly referred to all the instruments mentioned before. The *machete* is there separately mentioned thereafter. It was not under the law in force defined

as a weapon of offense and defense. Nor is it similar in general use or purpose to all the other instruments set forth in the said act. These have practically no other use. In the *Cruz Case* we were necessarily referring to the definition "for purposes of offense or defense" and the particular instruments included in that characterization.

The Act of 1924 was not so specific as the prior act and had to be construed as applying to instruments enumerated in 1905 "used for purposes of offense and defense."

Hence I am of the opinion that a *machete* is not distinctly within the reasoning of *People* v. *Cruz, supra,* and that the complaint should have alleged that the "arm" was being carried for purposes of offense and defense, or something similar.