## J. M. NEWMAN v. THE STATE.

### No. 37.   Decided January 12, 1910.

### Rehearing denied February 2, 1910.

**1.—Illegal Practice of Medicine—Information—Negativing Exceptions.**

Where upon appeal from a conviction of the illegal practice of medicine, objection was made that the information was insufficient in that it did not negative the exceptions set forth in the Act under which defendant was convicted, the same were not tenable, as it is only necessary to negative exceptions where they are contained in the enacting clause which defines the offense.  It is not required to anticipate defenses arising under a general Act and negative them.  Following Salter v. State, 44 Texas Crim. Rep., 591.

**2.—Same—Definition of Offense—Statutes Construed—Masseur.**

Where upon trial for the illegal practice of medicine, the defendant held himself out as a masseur doctor, and that he was a doctor who cured consumption, appendicitis, as well as all other diseases, inviting the public to call upon him and be healed, to which invitation many people responded, he could not shield himself under section 10, of the Act of the Thirtieth Legislature, pages 224-8, on the ground that he was a masseur and used no drugs or medicines whatever to effect cures.  Following Ex parte Collins, 57 Texas Crim. Rep., 2.

Appeal from the County Court of Kendall.  Tried below before the Hon. H. Theis.

Appeal from a conviction of illegally practicing medicine; penalty, a fine of $50 and one hour confinement in the county jail.

The opinion states the case.

*W. F. Hays,* for appellant.—On question of insufficiency of the indictment:  Salter v. State, 44 Texas Crim. Rep., 591; 22 Cyc., 344, and cases cited.

On question of insufficiency of the evidence:  Davis v. State, 6 Texas Crim. App., 133; French v. State, 14 Texas Crim. App., 76.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was charged in the County Court of Kendall County with unlawfully engaging in the practice of medicine without having first registered and filed for record the certificate required by law.  A jury was waived, and the case submitted to the court, and as result of the trial appellant was fined the sum of $50 and condemned to suffer confinement in the county jail for one hour.

1.  There are two questions raised in the appeal.  One was that the complaint and information are insufficient in that they do not negative the exceptions set forth in section 10 of the Act in question.  This was not necessary.  It is only necessary to negative exceptions where they are contained in the enacting clause which defines the offense.  It is not required to anticinate defenses arising under a general Act and negative them.

2. The other question relates to the sufficiency of the evidence to sustain the conviction, and involves a construction of the Acts of the Thirtieth Legislature, chapter 123, pp. 224 to 228, inclusive. The evidence shows that some time in 1908 appellant inserted in the local paper at Boerne the following advertisement:

"Prof. J. M. Newman,
THE MASSEUR DOCTOR,
Has Located in Boerne at the Boerne Hotel.
Room No. 21.                    Upstairs.
He is the doctor that cures consumption, appendicitis,
as well as all other diseases. Now is your time to be
healed. Come and see him while he is here."

Soon thereafter he undertook to treat a number of persons for sundry ailments, including warts, fever, kidney diseases and stammering. Testifying in his own behalf, appellant stated he was a doctor, and a great one; that he could cure the diseases that the M. D.'s could cure and the diseases that they could not cure; that he had treated and cured various patients of various ailments and received pay for his services in so doing; that he never used or prescribed medicine in treating his patients; that he only used the massage treatment; that he only rubbed patients for their ailments, and at no time pretended to be a physician or surgeon; that he did not practice medicine, but was opposed to the use of any medicine to effect cures. It was shown by the clerk that he had filed no license or authority to practice medicine.

In the recent case of Ex parte Collins, 57 Texas Crim. Rep., 2, 121 S. W. Rep., 501, we had occasion to consider the Act in question. We there held that the word "medicine," as used in the Constitution, embraced the art of healing by whatever scientific or supposedly scientific method; the art of preventing, curing or alleviating diseases, and remedying as far as possible results of violence and accident, and that it was broad enough to include any method that was supposed to possess curative power, and authorized the passage of the Act in question requiring physicians and surgeons, including osteopaths, to obtain a license before engaging in the practice of their profession. Section 13 of the Act in question provides that "Any person shall be regarded as practicing medicine within the meaning of this Act (1) who shall publicly profess to be a physician or surgeon and shall treat, or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury, by any system or method, or to effect cures thereof. (2) Or who shall treat or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury by any system or method or to effect cures thereof and charge therefor, directly or indirectly, money or other compensation." Section 10 of the Act provides that nothing in it shall be construed so as to discriminate against any particular school or system of medical practice, and that the Act shall

not apply to dentists legally qualified and registered under the laws of this State who confine their practice strictly to dentistry; nor to nurses to practice only nursing; nor to masseurs, in their particular sphere of labor, who publicly represent themselves as such. A fair analysis of section 13 classifies the practitioner who shall be subject and amenable to the law; first, it includes anyone who shall publicly profess to be a physician, and claim to effect cures by any system or method, and, second, those who shall treat or offer to treat any disease by any system or method, or to effect cures thereof, and charge therefor. Evidently the words "system or method" were intended to be wide enough in their scope to reach any and every school of medicine, whether based on the administration of pills, potions or pellets, or the modern, as many persons believe, excellent system of osteopathy or massage. The history of legislation upon this subject in this State shows that heretofore the Legislature in dealing with the practice of medicine had attempted to classify the different branches and provide for boards for the different schools. Evidently the ineffectiveness of these laws was brought to public attention because it is certain that the Thirtieth Legislature, with a view of closing every avenue of escape on technical grounds, and for the protection of the public health, as well as individual citizens against the quack, faker and charlatan, undertook to provide that any person shall be regarded as a practitioner of medicine who professed for pay to cure any kind of disorder or injury by any system or by any method. The first statement in the advertisement put out by appellant characterizes him as a masseur doctor. He advertised himself to be *the* doctor, and to cure consumption, appendicitis, as well as all other diseases, and warns the public that now is your time to be healed. Pursuant to his invitation many people did call to see him to be healed of their troubles. Can it be said that this man was not holding himself out as a physician, as one who treated and cured diseases? Can it be said that he did not, in the sense that the Legislature understood this term and method or system of treatment, know he is not exempt on the mere ground that he does not use drugs and medicines or surgical instruments? In the case of People v. Allcutt, 81 N. E. Rep., 1171, in treating a somewhat similar statute, it is said: "That to confine the definition of the word 'practice medicine' to the mere administration of drugs or the use of surgical instruments, would be to eliminate the corner-stone of successful medical practice, namely, the diagnosis. It would rule out of the profession those great physicians whose work was confined to consultation; the diagnosticians who leave to others the details of practice. Section 146 of the public health law provides that persons desiring to practice must pass a Regent's examination made up of suitable questions for thorough examination in anatomy, physiology, hygiene, chemistry, surgery, obstetrics, pathology and diagnosis, and therapeutics, including practice and materia medica (and here we may say that this sec-

tion corresponds with section 9 of our law). Diagnosis would, therefore, seem to be an integral part of both the study and practice of medicine so recognized by the law as well as common sense. The correct determination of what the trouble is must be the first step for the cure thereof. . . . It may be difficult by a precise definition to draw the line between where nursing ends and the practice of medicine begins, and the court should not attempt in construing this statute to lay down in any case a hard and fast rule on the subject." The court further says: "We are of opinion from the general current of the authorities throughout the country and from examination of the history and growth of our public health statutes that we should not apply the rule as laid down in Smith v. Lane, 24 Hun, 632. When we find as in this case a defendant holding himself out by sign and card as a doctor with office hours, who talks of his patients and gives treatments, who makes a diagnosis and prescribes diet, and conduct and remedies, simple though they may be, and who asserts the power to cure all diseases that any physician can cure without drugs and also diseases that they can not cure with drugs, and who takes payment for consultation wherein there was an examination and a determination of the trouble, that is, a diagnosis, as well as payment for subsequent treatment even if no drugs are administered, we must hold that he comes within the purview of the statute prohibiting the practice of medicine without being lawfully authorized and registered."

We think what we have said sufficiently disposes of the case. The appellant was undoubtedly guilty under all the proof, and the matters urged as a basis for reversal are, as we believe, without merit.

The judgment is affirmed.

*Affirmed.*

McCord, Judge, not sitting.

### ON REHEARING.

#### February 2, 1910.

RAMSEY, Judge.—In this case the appellant has filed a motion for rehearing in which the correctness of the court's opinion as to the sufficiency of the information is attacked on the ground that the exceptions in the Act defining the offense are not negatived, and in said motion we are cited to the case of Salter v. State, 44 Texas Crim. Rep., 591, and the contention is earnestly made that the opinion herein is in conflict with the decision of that case. Our opinion is, however, that there is no conflict in the two cases. Counsel, as we think, seems to have overlooked a fact touching the law considered in the Salter case. By reference to the Acts of the Twenty-seventh Legislature, chapter 12, page 12, it will be seen that section 8 of that Act defines the offense for which Salter was prosecuted. That section is as follows: "From and after the passage of this amendment it shall be unlawful for any person to practice medicine, surgery or obstetrics in

this State except: First, all those who were practicing medicine in Texas prior to January 1, 1885. Second, all those who began the practice of medicine in this State after the above date who have complied with the laws of this State regulating the practice of medicine in force prior to the passage of this Act; provided, that those who had diplomas recorded since January, 1891, shall present to the State Board of Medical Examiners herein provided for satisfactory evidence that their diplomas were issued by bona fide medical colleges of respectable standing, receive a certificate from said boards, which shall be recorded as herein provided for, and provided that no fees shall be required for the issuing of such certificates. Third, all persons who shall hereafter receive certificates from the Board of Medical Examiners of this State, as above provided for, and who shall also in all other respects have complied with the provisions of this Act. Fourth, and provided, that all persons who may change their residence to the State of Texas, on filing a true copy of a license granted by the Board of Medical Examiners of another State or territory, certified by the affidavits of the president and secretary of said board, with satisfactory proof of the genuineness of the same, and showing that the standard of requirements of the medical laws of said State or territory and that adopted by said Board of Medical Examiners are equal to that provided for in this Act; and who, on payment of the usual fee of fifteen dollars, may be registered and receive a license from the Board of Medical Examiners of Texas to practice in this State. Fifth, and provided further, that all persons who desire to hereafter begin the practice of midwifery in this State, and charge for their services, shall make application to the medical examining boards, said application to be accompanied with the fee of five dollars as herein provided, and when the said medical examining boards may admit to examination such applicant, and after passing a satisfactory examination in this special branch, will be granted a license to practice midwifery in the State of Texas; provided, this shall not apply to those who do not follow midwifery as a profession, and who do not advertise themselves as midwives, or hold themselves out to the public as practicing the profession of midwifery."

The holding in the Salter case, supra, is directly in line with the statement in the original opinion, to the effect that "it is only necessary to negative exceptions where they are contained in the enacting clause which defines the offense." We think this may be stated to be the rule of pleading on this question: "Where an offense is created by statute and there is an exception in the enacting clause, the indictment must negative the exception." Duke v. State, 42 Texas Crim. Rep., 3; Young v. State, 42 Texas, 462; Summerlin v. State, 3 Texas Crim. App., 444; Rice v. State, 37 Texas Crim. Rep., 36.

This is placed on the ground that such exceptions are essentially descriptive of the offense. In the case at bar the matters relied on are purely defensive and are contained in a different section of the law

than that which defines the offense. Some of the authorities have gone to the extent of holding that although negative averments may be in the enacting clause, still if they are not essentially descriptive of the offense, they need not be set out in the indictment. Mosely v. State, 18 Texas Crim. App., 311; Hodges v. State, 44 Texas Crim. Rep., 444; Wilkerson v. State, 44 Texas Crim. Rep., 455; Osborne v. State, 42 Texas Crim. Rep., 557, 72 S. W. Rep., 592; Hankins v. State, 72 S. W. Rep., 191.

The other matters raised in the motion were thoroughly considered on the original appeal, and need not be further noticed.

Believing that the disposition made of the case is correct, the motion for rehearing will be refused.

*Overruled.*

McCord, Judge, not sitting.