PD-1358-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/20/2016 4:58:05 PM
Accepted 5/23/2016 6:43:17 AM
ABEL ACOSTA
CLERK

## Nos. PD-1358-15, PD-1359-15, PD-1360-15, & PD-1361-15

In the
Court of Criminal Appeals
At Austin

————————◆————————

## Nos. 14-14-00307-CR, 14-14-00308-CR, 14-14-00309-CR, & 14-14-00310-CR

In the
Court of Appeals
For the
Fourteenth District of Texas
At Houston

————————◆————————

## Nos. 1909496, 1909497, 1909498, & 1909499

In County Criminal Court at Law Number Six
Of Harris County, Texas

————————◆————————

## ERIC L. BAUMGART

*Appellant*

V.

## THE STATE OF TEXAS

*Appellee*

————————◆————————

STATE'S REPLY TO APPELLANT'S BRIEF ON THE MERITS

————————◆————————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**DAN MCCRORY**
**HEYWARD CARTER**
**LAUREN BYRNE**
Assistant District Attorneys
Harris County, Texas

1201 Franklin, Suite 600
Houston, Texas 77002
Tel.: 713/274-5826
FAX No.: 713/755-5809
*Counsel for Appellee*

i

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

When this Court granted discretionary review, it announced that oral argument would not be permitted.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT.................................................. ii

INDEX OF AUTHORITIES.......................................................................................iv

STATEMENT OF THE CASE......................................................................................1

STATEMENT OF THE PROCEDURAL HISTORY .................................................1

STATEMENT OF FACTS ...........................................................................................2

SUMMARY OF THE ARGUMENT ..........................................................................7

> The court of appeals did not err in its application of section 2.02 by holding that the State need not negate an exception in the indictment when the exception is in a separate statute from the statute defining the offense and a prima facie case can be made without proof negating the exception because: (1) this proposition is supported by well-established precedent from the court of criminal appeals; (2) section 2.02's plain language does not require negation of the exceptions in the occupations code because those exceptions do not contain the mandatory language that triggers section 2.02's application; and (3) any other interpretation of section 2.02 would result in the absurd result of requiring the State to plead and prove over 40 exceptions.

REPLY TO THE GROUND FOR REVIEW ...........................................................7

CONCLUSION .........................................................................................................28

CERTIFICATE OF SERVICE .................................................................................29

CERTIFICATE OF COMPLIANCE ........................................................................30

# INDEX OF AUTHORITIES

## CASES

*American Plant Food Corp. v. State*,
  508 S.W.2d 598 (Tex. Crim. App. 1974)..................................................9, 11, 15

*Arias v. State*,
  477 S.W.3d 925 (Tex. App.--Houston [14th Dist.] 2015, no pet.) ............... 17, 27

*Awadelkariem v. State*,
  974 S.W.2d 721 (Tex. Crim. App. 1998).............................................................18

*Baker v. State*,
  132 Tex. Crim. 527, 106 S.W.2d 308 (1937) (opin. on reh'g)............................14

*Baumgart v. State*,
  No. 14-14-00306-CR, 2015 WL 3986153
  (Tex. App.--Houston [14th Dist.] June 30, 2015, pet. granted) .............1, 9, 10, 11

*Bell v. State*,
  62 Tex. Crim. 242, 137 S.W. 670 (1911) ...........................................................14

*Bluitt v. State*,
  137 S.W.3d 51 (Tex. Crim. App. 2004)...............................................................18

*Boykin v. State*,
  818 S.W.2d 782 (Tex. Crim. App. 1991)....................................................... 18, 19

*Bragg v. State*,
  740 S.W.2d 574 (Tex. App.--Houston [1st Dist.] 1987, pet. ref'd).....................27

*Elizondo v. State*,
  No. PD-1039-14, 2016 WL 1359341 (Tex. Crim. App. April 6, 2016) (not yet
  reported) ....................................................................................... 17, 18

*Gardner v. State*,
  478 S.W.3d 142 (Tex. App.--Houston [14th Dist.] 2015, pet. ref'd)...................11

*Kirk v. State*,
  454 S.W.3d 511 (Tex. Crim. App. 2015).............................................................18

*McElroy v. State*,
720 S.W.2d 490 (Tex. Crim. App. 1986)....................................................... 16, 17

*Mills v. Kennedy*,
1 Bailey 17 (1828)...............................................................................................12

*Mosely v. State*,
18 Tex. Ct. App. 311 (1885) ................................................................................13

*Newman v. State*,
58 Tex. Crim. 223, 124 S.W. 956 (1910) (opin. on reh'g) ........................... 13, 16

*Rosemond v. United States*,
134 S.Ct. 1240 (2014) .........................................................................................17

*Salazar v. State*,
423 S.W.2d 297 (Tex. Crim. App. 1968)...............................................................15

*State of Texas ex rel. Vance v. Clawson*,
465 S.W.2d 164 (Tex. Crim. App. 1971)...............................................................11

*State v. Duke*,
42 Tex. 455 (1874) ...................................................................................... 12, 15

*Threlkeld v. State*,
558 S.W.2d 472 (Tex. Crim. App. 1977).................................................... 16, 18

**STATUTES**

TEX. OCC. CODE ANN. § 1702.001 (West 2012) .......................................................8

TEX. OCC. CODE ANN. § 1702.102 (West 2012) ....................................................2, 8

TEX. OCC. CODE ANN. § 1702.108 (West 2012) ....................................................2, 8

TEX. OCC. CODE ANN. § 1702.321-1702.332 (West 2012 & Supp. 2014) ..........9, 19

TEX. OCC. CODE ANN. § 1702.322 (West 2012) .......................................................3

TEX. OCC. CODE ANN. § 1702.388 (West 2012) ....................................................3, 9

TEX. PEN. CODE ANN. § 2.02 (West 2011) ...........................................................8, 18

## OTHER AUTHORITIES

Acts 1973, 63rd Leg., p. 883, ch. 399, § 1, eff. Jan. 1, 1974 ....................................16

*Baumgart v. State*,
 No. PD-1358-15, 2016 WL 922166
 (Tex. Crim. App. Mar. 9, 2016) (not designated for publication) ....................7, 11

## CONSTITUTIONAL PROVISIONS

TEX. CONST. art. V (1891) ...................................................................................14

TEX. CONST. art. V, §§ 3, 6 (1876) .......................................................................13

**TO THE HONORABLE TEXAS COURT OF CRIMINAL APPEALS:**

## STATEMENT OF THE CASE

Appellant was charged by five indictments with the offense of violating the Private Security Act. (CR I 10; CR II 11; CR III 11; CR IV 10; CR V 10).[1] After a jury found appellant guilty of the five charged offenses, the judge assessed punishment at two years of community supervision for each offense. (CR I 499; CR II 517; CR III 513; CR IV 504; CR V 497).

## STATEMENT OF THE PROCEDURAL HISTORY

On June 30, 2015, the Fourteenth Court of Appeals issued a published opinion in which it affirmed appellant's convictions in cause numbers 1909496, 1909497, 1909498, and 1909499, and reversed his conviction in cause number 1909495. *Baumgart v. State*, No. 14-14-00306-CR, 2015 WL 3986153, at *6 (Tex. App.--Houston [14th Dist.] June 30, 2015, pet. granted). The State did not file a motion for rehearing or a petition for discretionary review (PDR) for the cause number that was reversed.

On July 13, 2015, appellant filed a motion for rehearing for the four cause numbers in which his convictions were affirmed. The court of appeals denied

---

[1]     "CR I" refers to the clerk's record for cause number 1909495.
         "CR II" refers to the clerk's record for cause number 1909496.
         "CR III" refers to the clerk's record for cause number 1909497.
         "CR IV" refers to the clerk's record for cause number 1909498.

appellant's motion on August 6, 2015. Appellant filed a PDR in these four cases on November 25, 2015. This Court denied appellant's PDR on March 9, 2016. On this same date, however, this Court granted review on its own motion and directed the parties to address a particular question.

## STATEMENT OF FACTS

The licensing requirement

Renearl Bowie is an assistant director assigned to the Regulatory Services Division of the Texas Department of Public Safety (DPS). (RR V 15-16). Director Bowie's division regulates the private security industry and oversees the licensing of entities involved in that industry. (RR V 16-17). The DPS is the sole licensing authority for the private security industry. (RR V 18).

Director Bowie explained that the Private Security Act (the Act), located in chapter 1702 of the Texas Occupations Code, governs and regulates the private security industry. (RR V 20). He further explained that the Act requires a security guard to be licensed. (RR V 21, 23-26). TEX. OCC. CODE ANN. § 1702.102(a)(1) (West 2012) (requiring license for "guard company"); TEX. OCC. CODE ANN. § 1702.108(2) (West 2012) (defining "guard company" as a person who engages in the business of a guard on a contractual basis for another person to prevent, observe, or detect unauthorized activity on private property). A violation of this

---

"CR V" refers to the clerk's record for cause number 1909499.

2

requirement constitutes a Class A misdemeanor. (RR V 21-22). TEX. OCC. CODE ANN. § 1702.388 (West 2012).

Director Bowie stated that the Act does provide some exceptions to the licensing requirement. (RR V 26). Namely, there is an exception for a full-time peace officer. (RR V 27). TEX. OCC. CODE ANN. § 1702.322(1) (West 2012). Director Bowie explained that the Act defines a full-time officer, in part, as one who: (1) works as a peace officer on the average of at least 32 hours a week; (2) is compensated at least at the minimum wage; and (3) is entitled to all employee benefits offered to a peace officer by his employing agency. (RR V 27-29, 34). TEX. OCC. CODE ANN. § 1702.322(1)(D) (West 2012). A peace officer who does not meet these requirements must obtain a license to work security. (RR V 34).

Director Bowie checked DPS records and determined that appellant did not have a license during the time period spanning June to December of 2012. (RR V 36-37). In other words, appellant did not have a license to operate as a security guard on the dates alleged in the indictments. (RR V 38; CR I 10; CR II 11; CR III 11; CR IV 10; CR V 10).

The offenses

Tammy Neuman works for a non-profit charitable organization that operates a bingo hall that brings in about $10,000 on a daily basis. (RR V 53-55, 62, 77).

3

Given this amount of cash on hand, Neuman routinely hires uniformed police officers to serve as "security on the premises." (RR V 62-64).

Neuman personally knows appellant since he and her husband grew up together. (RR V 64-65). She hired appellant to work as a security guard at the bingo hall on occasion. (RR V 64-67). In 2012, appellant worked for her on June 23, July 2, July 7, and July 29. (RR V 74-75). Neuman thought appellant was a full-time police officer because he wore a uniform, carried a gun, drove a police car, and had a badge. (RR V 68-69). She also thought he worked for the Liberty County Sheriff's Department. (RR V 69). Appellant represented himself to her as a full-time peace officer. (RR V 69).

When appellant was arrested on November 17, 2012, the arresting officer found an identification card in appellant's wallet that identified him as a reserve police officer, with an expiration date of December 31, 2012. (RR V 188).

Appellant was not a full-time officer

To establish that appellant was not a full-time peace officer (meaning he was required to have a security license), the State presented the testimony of Kimberly Harris, the County Treasurer for Liberty County. (RR V 81-82). Her office operates the payroll for the employees of Liberty County, including the constables' precincts within Liberty County. (RR V 83-84, 86). Her office also serves as the human resource office and, as such, it maintains files for all county employees,

4

including payroll records, retirement records, and worker's compensation records. (RR V 89). "[A]nything to do with an employee's record, it comes through [her] office." (RR V 89). Furthermore, all county employees are eligible for health insurance and retirement benefits. (RR V 88).

Harris searched her office's records for paperwork associated with appellant from 2008 through 2013. (RR V 93-94). No paychecks were issued to appellant and there were no payroll records indicating that appellant received any compensation from the county. (RR V 94). There was no record of any time sheets submitted by appellant. (RR V 95). There was no record of any tax forms, such as a W-2, for appellant. (RR V 96). There were no vehicle compensation records for appellant. (RR V 96-97). There was no record of any county benefits being paid to appellant. (RR V 97). As such, Harris determined appellant was never a paid employee of Liberty County from 2008 through 2013. (RR V 97). In fact, to her knowledge, appellant had never been an employee of Liberty County. (RR V 108).

In an effort to show that he was a full-time peace officer at the time of the offenses (which would mean he did not need a license to work as a security guard), appellant presented the testimony of Chad Pafford. Pafford was the elected Constable in Liberty County from 2009 to 2013. (RR VI 75). He hired appellant as a reserve officer in 2009. (RR VI 75, 83-84). In 2011, Pafford "changed [appellant] over to full time." (RR VI 79, 85). There were no funds in Pafford's

5

budget to pay appellant any money, so he compensated appellant by providing him the use of a "take-home car" and the use of county equipment. (RR VI 79, 101). The car was apparently a 2000 Ford Crown Victoria with about 260,000 miles. (RR VI 109).

Regarding the three criteria for being a full-time officer, Pafford first claimed that appellant worked for him at least 32 hours a week. (RR VI 89). Pafford admitted, however, that he had no paperwork documenting his claim that appellant worked 32 hours per week. (RR VI 105). He explained that appellant worked his 32 hours per week on the honor system. (RR VI 105).

Second, Pafford testified that he believed appellant earned minimum wage while working for him because he considered the value of the use of the take-home car and the county equipment to exceed minimum wage. (RR VI 108-110). However, despite considering appellant's use of county property to constitute compensation in excess of minimum wage, Pafford did not report this supposed compensation to the Liberty County Tax Assessor's Office, the IRS, or any other taxing authority. (RR VI 122-123).

Third, Pafford testified that when appellant became a full-time employee, he did not get health care or a pension plan. (RR VI 103). Pafford did not know if appellant was entitled to all benefits offered by the county. (RR VI 110). Later,

Pafford testified that appellant received Workmen's Compensation benefits and waived all other benefits. (RR VI 117).

## SUMMARY OF THE ARGUMENT

The court of appeals did not err in its application of section 2.02 by holding that the State need not negate an exception in the indictment when the exception is in a separate statute from the statute defining the offense and a prima facie case can be made without proof negating the exception because: (1) this proposition is supported by well-established precedent from the court of criminal appeals; (2) section 2.02's plain language does not require negation of the exceptions in the occupations code because those exceptions do not contain the mandatory language that triggers section 2.02's application; and (3) any other interpretation of section 2.02 would result in the absurd result of requiring the State to plead and prove over 40 exceptions.

## REPLY TO THE GROUND FOR REVIEW

This Court granted review on its own motion and directed the parties to address the following question:

> Did the court of appeals err in its application of Penal Code § 2.02?

*Baumgart v. State*, No. PD-1358-15, 2016 WL 922166 (Tex. Crim. App. Mar. 9, 2016) (not designated for publication).

7

Relevant penal code provision

Section 2.02 of the Texas Penal Code is titled "Exception" and provides:

> (a) An exception to an offense in this code is so labeled by the phrase: "It is an exception to the application of . . . ."

> (b) The prosecuting attorney *must negate the existence of an exception in the accusation charging commission of the offense* and prove beyond a reasonable doubt that the defendant or defendant's conduct does not fall within the exception.

> (c) This section does not affect exceptions applicable to offenses enacted prior to the effective date of this code.

TEX. PEN. CODE ANN. § 2.02 (West 2011) (italics added).

Relevant chapter 1702 provisions

The offense for which appellant was convicted is not found in the penal code; rather, the applicable statute resides in the Texas Occupations Code. Chapter 1702 of the Texas Occupations Code is known as the Private Security Act. TEX. OCC. CODE ANN. § 1702.001 (West 2012). This Act requires a security guard to be licensed. TEX. OCC. CODE ANN. § 1702.102(a)(1) (West 2012) (requiring license for "guard company"); TEX. OCC. CODE ANN. § 1702.108(2) (West 2012) (defining "guard company" as a person who engages in the business of a guard on a contractual basis for another person to prevent, observe, or detect unauthorized

8

activity on private property). A person commits an offense if he violates this requirement. TEX. OCC. CODE ANN. § 1702.388(a) (West 2012). Appellant was charged with the commission of this offense by acting as a guard without a license. (CR II 11; CR III 11; CR IV 10; CR V 10).

Subchapter N of chapter 1702 is titled "EXCEPTIONS." This subchapter contains 12 statutes which, collectively, provide a list of about 41 categories of individuals to whom chapter 1702 "does not apply." TEX. OCC. CODE ANN. § 1702.321-1702.332 (West 2012 & Supp. 2014).

The court of appeals opinion

On direct appeal, appellant argued his indictments should have been quashed because they failed to negate the numerous exceptions listed in Subchapter N of chapter 1702 in violation of section 2.02. (appellant's original brief, p. 14). The court of appeals rejected this argument. *Baumgart*, 2015 WL 3986153, at *2-3. The court explained that, generally, when a penal statute embraces an exception that is part of the statute itself, the State must negate the exception in the charging instrument. *Id*. at *2. However, the court further explained that when the exception is in a separate section from the provision that states the offense and a prima facie case can be made without proof negating the exception, the exception need not be negated in the charging instrument. *Id*. at *3 (citing *American Plant Food Corp. v. State*, 508 S.W.2d 598, 604-05 (Tex. Crim. App. 1974)).

The court then noted that the exceptions to appellant's charged offense are found in a section separate from the section that provides for the offense. *Id*. The court further observed that a prima facie case of the charged offense could be made without proof negating the exceptions. *Id*. Under such circumstances, the court concluded that the State was not required to negate the exceptions in the indictments and, therefore, the trial judge did not err in denying appellant's motions to quash. *Id*.

Argument and analysis

Appellant contends that the court of appeals erred in its application of section 2.02 by holding that "where an exception is in a separate section from the provision that states the offense and a prima facie case can be made without proof negating the exception, it is not an essential requirement that it be negated in the information or complaint." (appellant's brief, pp. 19-20 (citing *Baumgart*, 2015 WL 3986153, at *3)). Appellant maintains that the applicability of section 2.02 should not depend on whether the statutory exception is housed in same statute that defines the penal offense.

Despite appellant's stance, the court of appeals did not err in interpreting section 2.02 in this manner because it relied on authority from this Court in reaching this conclusion. Namely, the court of appeals cited *American Plant Food Corp.* in support of its holding that restricted section 2.02's application to

situations in which the exception is located in the same statute as the offense. *Baumgart*, 2015 WL 3986153, at *3. In *American Plant Food Corp.*, this Court held that when an "exception is in a separate section from the provision which states the offense, and a prima facie case can be made without proof negating the exception[, i]t is not an essential requirement that it be negated in" the charging instrument. 508 S.W.2d at 604-05.

As an intermediate appellate court, the court of appeals was bound to follow this precedent from the court of criminal appeals. *Gardner v. State*, 478 S.W.3d 142, 147 (Tex. App.--Houston [14th Dist.] 2015, pet. ref'd) (citing *State of Texas ex rel. Vance v. Clawson*, 465 S.W.2d 164, 168 (Tex. Crim. App. 1971)). Having followed the precedent of this Court in applying section 2.02 (as it was bound to do), the court of appeals did not "err in its application of Penal Code § 2.02." *Baumgart*, 2016 WL 922166 at *1.

Recognizing that the ruling in *American Plant Food Corp.* is adverse to his position, appellant states that this Court "was wrong 42 years ago" when it issued this opinion and prays for the overruling of this case. (appellant's brief, pp. 25, 32). The *American Plant Food Corp.* ruling, however, is not some aberrational holding that may be lightly discarded. The proposition that an exception located in a different statute than the offense need not be pled has roots in precedent established

11

well over a century ago and, in some instances, before this Court was created or even before Texas became a state.

In 1874, for example, the Texas Supreme Court held that "when an offense is created by statute, and there is an exception *in the enacting clause*, the indictment must negative the exception." *State v. Duke*, 42 Tex. 455, 459 (1874) (italics added). In other words, this opinion restricted the need to plead an exception to situations in which the exception was in the same section as the offense. *Id*. at 456-57. The Court explained: "The reason of this rule is that such exceptions constitute a part of the description of the offense, and unless they are negatived no offense is stated." *Id*. at 459.

In reaching this conclusion, the *Duke* Court cited to an 1828 South Carolina case which held: "It is, therefore, well established, that in declaring upon penal statutes, where there is an exception in the enacting clause, the plaintiff must shew [sic] that the defendant is not within the exception. If the exception be in another and subsequent clause, then it is a matter of defence [sic], and the other party must shew it to exempt himself from the penalty." *Id*. at 460 (citing *Mills v. Kennedy*, 1 Bailey 17 (1828)). Therefore, through the 1874 *Duke* opinion, the foundation was set for the *American Plant Food Corp.* ruling exactly 100 years later.

In 1885, after jurisdiction over criminal appeals was constitutionally transferred from the Texas Supreme Court to the Texas Court of Appeals[2], the latter court addressed the issue of when exceptions must be pled in the charging instrument. *Mosely v. State*, 18 Tex. Ct. App. 311 (1885). The court ruled:

> The provisos [exceptions] in the [statute defining the offense] are not part of the "enacting clause." Nor are they descriptive of the offense. The "enacting clause" completely defines the offense, and prescribes the punishment therefor, without exceptions. Where the words of the statute defining the offense are so entirely separable from the exception that all the ingredients constituting the offense may be clearly and accurately alleged without any reference to the exception, then it is not necessary that the exception should be negatived. But where the exception is so incorporated with the language defining the offense that the ingredients of the offense cannot be accurately and clearly described if the exception is omitted, the indictment must allege enough to show that the accused is not within the exception. An indictment must show a *prima facie* case against the defendant, and it need not do more.

*Mosely*, 18 Tex. Ct. App. at 312 (original italics).

In 1910, after this Court was constitutionally created[3], it confirmed the holdings in *Duke* and *Mosely* and provided the following rule of pleading: "it is only necessary to negative exceptions when they are contained in the enacting clause which defines the offense." *Newman v. State*, 58 Tex. Crim. 223, 124 S.W. 956, 958 (1910) (opin. on reh'g). "Where an offense is created by statute, and

---

[2]     TEX. CONST. art. V, §§ 3, 6 (1876).

13

there is an exception in the enacting clause, the indictment must negative the exception." *Id*. This Court explained the reason for such a pleading rule:

> This is placed on the ground that such exceptions are essentially descriptive of the offense. In the case at bar the matters relied on are purely defensive, and are contained in a different section of the law than that which defines the offense.

*Id*.

The following year, this Court added the proposition that the State is not required to disprove an exception when the facts relating to the exception are peculiarly within the defendant's knowledge. *Bell v. State*, 62 Tex. Crim. 242, 137 S.W. 670, 670-71 (1911).

Finally, in 1937, this Court collected and reviewed case law on this issue from the previous half century or so and concluded, "if such exceptions be placed in a separate section or article from the one containing the definition of the offense, or if they be not such as to be essential to the definition of the offense, it will not be necessary to negative such exceptions in the indictment charging such offense." *Baker v. State*, 132 Tex. Crim. 527, 106 S.W.2d 308, 311 (1937) (opin. on reh'g). However, the *Baker* Court provided an exception to this rule: "if the thing forbidden by the particular statute under consideration could not be proved, or the case could not be made out without proof of the so-called exception or omission,

---

[3] TEX. CONST. art. V, §§ 4, 5 (1891).

14

then said exception would be a necessary element of the offense, and its existence should be negatived in the indictment and find support in proof." *Id.* at 311-12. "If, however, the exception be of such form and character as that a prima facie case could be made out against the accused for the violation charged, without proof of the omission or exception, then clearly the Legislature might by enactment have placed such exception in a separate article or section and there is no need for their negation." *Id.* at 312; *see also Salazar v. State*, 423 S.W.2d 297, 299 (Tex. Crim. App. 1968) (reinforcing *Baker* holding).

Accordingly, there is a long line of precedent supporting the *American Food Plant Corp.* ruling that an exception located in a separate section from the offense need not be pled in the indictment. *American Food Plant Corp.*, 508 S.W.2d at 604-05. Nevertheless, appellant maintains *American Plant Food Corp.* should be overruled because there is no reason to differentiate between exceptions, for pleading purposes, based on whether they are in the same statute as the charged offense.

But both this Court and the Texas Supreme Court have provided reasons for this rule. The Supreme Court explained that exceptions within the same statute as the offense must be plead because: "The reason of this rule is that such exceptions constitute a part of the description of the offense, and unless they are negatived no offense is stated." *Duke*, 42 Tex. at 459. Similarly, this Court explained that only

exceptions within the same statute as the offense need be pled because "such exceptions are essentially descriptive of the offense." *Newman*, 124 S.W. at 958.

Appellant also argues that the court of appeals's reliance on the fact that the exceptions are in a different statute than the charged offense is erroneous because section 2.02's plain language makes no mention of such a pleading rule. TEX. PEN. CODE ANN. § 2.02 (West 2011). Regarding this claim, the State is certainly aware that none of the cases it cited above (starting with the 1974 *American Plant Food Corp.* case and working back in time to the cases issued in the 1800s) incorporate section 2.02 into their analysis. This is because each of these cases predates the effective date of section 2.02.[4] Acts 1973, 63rd Leg., p. 883, ch. 399, § 1, eff. Jan. 1, 1974.

So the "exceptions pleading rule" announced in those cases was a common law rule. But section 2.02 has been interpreted as a codification of the common law rule that an exception must be negated in the indictment only when the exception is in the same statute as the offense. *McElroy v. State*, 720 S.W.2d 490, 493 (Tex. Crim. App. 1986); *Threlkeld v. State*, 558 S.W.2d 472, 473 (Tex. Crim. App. 1977). On occasion, when a common law rule is codified, an aspect of the common law rule may survive and apply to the codifying statute even though such

---

[4]  *American Plant Food Corp.* was actually issued several months after section 2.02 was enacted, but the offense date for that case very likely predated the enactment date, rendering the newly-created statute inapplicable to that case.

16

aspect is not specifically stated in the newly created statute. *Elizondo v. State*, No. PD-1039-14, 2016 WL 1359341, at *9 (Tex. Crim. App. April 6, 2016) (not yet reported) (legislature's codification of provocation did not eliminate common law element of intent even though statute did not specifically mention intent). Therefore, the plain language of section 2.02 does not necessarily eliminate the long-standing rule providing that exceptions need not be negated if they are located in a section separate from the section in which the offense is defined.

Furthermore, this rule is consistent with the general proposition that the State is not required to negate as an element of the offense matters "peculiarly within the knowledge of the defendant" because such matters support a defensive theory. *Arias v. State*, 477 S.W.3d 925, 929 (Tex. App.--Houston [14th Dist.] 2015, no pet.) (citing *Rosemond v. United States*, 134 S.Ct. 1240, 1256-57 (2014)). A review of the "exceptions" listed in the occupations code reveals that many of them involve facts that likely would fall only within appellant's knowledge. For example, appellant is much better positioned to know whether he owned and installed an alarm device on his own property. TEX. OCC. CODE ANN. § 1702.328(1) (West 2012).

Moreover, well after section 2.02 was enacted, this Court interpreted it consistent with the common law rule that exceptions must be pled in the indictment only when they are in the same statute as the offense. *McElroy*, 720 S.W.2d at 493;

17

*Threlkeld*, 558 S.W.2d at 473. Since the legislature has met without overturning *McElroy* and *Threlkeld*'s construction of section 2.02, it is presumed that the legislature intends for this construction to continue to apply to section 2.02. *Elizondo*, 2016 WL 1359341, at \*9 (citing *Awadelkariem v. State*, 974 S.W.2d 721, 725-26 (Tex. Crim. App. 1998), *overruled in part by Kirk v. State*, 454 S.W.3d 511, 515 (Tex. Crim. App. 2015)). Accordingly, even considering the plain language of section 2.02, the court of appeals's application of this statute was not erroneous.

Finally, if appellant seeks to interpret the plain language of section 2.02 in the strictest sense, so be it. Such an approach actually may be the most expedient way of disposing of this issue.

Under the rules of statutory construction, a reviewing court considers the plain language of the statute and focuses on the literal text. *Bluitt v. State*, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). The plain and literal text of section 2.02 expressly limits it application to an exception that is so labeled by the phrase: "It is an exception to the application of…" Tex. Pen. Code Ann. § 2.02(a) (West 2011). Other than an "exception" defined by this precise language, section 2.02 does not provide for its application to any other "exception" described in or out of the penal code.

The "exceptions" listed in the occupations code, of course, do not bear the "It is an exception to the application of…" language mandated by section 2.02.

18

TEX. OCC. CODE ANN. § 1702.321-1702.332 (West 2012 & Supp. 2014). Absent such specific language, the pleading and proof requirements of section 2.02 have no application to the occupations code exceptions based on the plain language of the penal code statute. Considering the plain language of section 2.02, the court of appeals did not err in finding no error in the indictments.

However, even assuming the plain language of section 2.02 did favor appellant's interpretation of the statute, his claim would remain meritless. When the application of a statute's plain language would lead to absurd results, the language should not be applied literally. *Boykin*, 818 S.W.2d at 785.

Under appellant's interpretation of section 2.02, the State would have to plead and prove the negation of more than 40 exceptions listed in Subchapter N, many of which appellant is in much better position to have knowledge of than the State. Specifically, according to appellant's interpretation, the State would be required to plead in the indictments that appellant was not:

- An officer or employee of the United States, this state, or a political subdivision of the state performing official duties. TEX. OCC. CODE ANN. § 1702.321(a) (West 2012).

- A person who has full-time employment as a peace officer and who receives compensation for private employment on an individual or an independent

19

contractor basis as a patrolman, guard, extra job coordinator, or watchman. TEX. OCC. CODE ANN. § 1702.322(1) (West 2012).

- A reserve peace officer who is performing guard, patrolman, or watchman duties for a county while being compensated solely by that county. TEX. OCC. CODE ANN. § 1702.322(2) (West 2012).

- A peace officer acting in an official capacity in responding to a burglar alarm or detection device. TEX. OCC. CODE ANN. § 1702.322(3) (West 2012).

- A person engaged in the business of electronic monitoring of an individual as a condition of that individual's community supervision, parole, mandatory supervision, or release on bail, if the person does not perform any other service that requires a license. TEX. OCC. CODE ANN. § 1702.322(4) (West 2012).

- A person employed in an employee-employer relationship exclusively and regularly by one employer in connection with the affairs of the employer. TEX. OCC. CODE ANN. § 1702.323(a) (West 2012).

- A manufacturer or a manufacturer's authorized distributor while selling equipment intended for resale. TEX. OCC. CODE ANN. § 1702.324(b)(1) (West Supp. 2014).

- A person engaged exclusively in the business of obtaining and providing information to: (a) determine creditworthiness; (b) collect debts, or (c)

ascertain the reliability of information provided by an applicant for insurance, an indemnity, or surety bond. TEX. OCC. CODE ANN. § 1702.324(b)(2) (West Supp. 2014).

- A person engaged exclusively in the business of repossessing property that is secured by a mortgage or other security interest. TEX. OCC. CODE ANN. § 1702.324(b)(3) (West Supp. 2014).

- A person who is engaged in the business of psychological testing or other testing and interviewing services for preemployment purposes. TEX. OCC. CODE ANN. § 1702.324(b)(4) (West Supp. 2014).

- A person who is engaged in obtaining information that is public information under chapter 552 of the government code. TEX. OCC. CODE ANN. § 1702.324(b)(5) (West Supp. 2014).

- A licensed engineer practicing engineering or directly supervising engineering practice. TEX. OCC. CODE ANN. § 1702.324(b)(6) (West Supp. 2014).

- An employee of a cattle association who inspects livestock brands under the authority granted by the Grain Inspection, Packers and Stockyards Administration of the U.S. Department of Agriculture. TEX. OCC. CODE ANN. § 1702.324(b)(7) (West Supp. 2014).

- A landman performing activities in the course and scope of the landman's business. TEX. OCC. CODE ANN. § 1702.324(b)(8) (West Supp. 2014).

- An attorney engaged in the practice of law. TEX. OCC. CODE ANN. § 1702.324(b)(9) (West Supp. 2014).

- A person who obtains a document for use in litigation under an authorization or subpoena issued for a deposition. TEX. OCC. CODE ANN. § 1702.324(b)(10) (West Supp. 2014).

- An admitted insurer, insurance adjuster, agent, or insurance broker licensed by the state, performing duties in connection with insurance transacted by that person. TEX. OCC. CODE ANN. § 1702.324(b)(11) (West Supp. 2014).

- A person who on his own property or on his employer's property installs, changes, or repairs a mechanical security device, repairs an electronic security device, or cuts or makes a key for a security device. TEX. OCC. CODE ANN. § 1702.324(b)(12) (West Supp. 2014).

- Security personnel working at a commercial nuclear power plant licensed by the United States Nuclear Regulatory Commission. TEX. OCC. CODE ANN. § 1702.324(b)(13) (West Supp. 2014).

- A licensed accountant, an owner of an accounting firm, or an employee of an accountant or accounting firm while performing regulated services. TEX. OCC. CODE ANN. § 1702.324(b)(14) (West Supp. 2014).

- A retailer, wholesaler, or other person who sells mechanical security devices. TEX. OCC. CODE ANN. § 1702.324(b)(1) (West Supp. 2014).

- Certain employees performing investigative services. TEX. OCC. CODE ANN. § 1702.324(b)(16) (West Supp. 2014).

- Certain licensed social workers engaged in the practice of social work. TEX. OCC. CODE ANN. § 1702.324(b)(17) (West Supp. 2014).

- A licensed person engaged in the business of selling, maintaining, repairing, programming, or placing lockboxes used for accessing real property. TEX. OCC. CODE ANN. § 1702.324(b)(18) (West Supp. 2014).

- A certified automobile club that unlocks a vehicle at the owner's request. TEX. OCC. CODE ANN. § 1702.324(b)(19) (West Supp. 2014).

- A common carrier by rail engaged in regulated interstate commerce and transporting commodities essential to the national defense and general welfare of the community. TEX. OCC. CODE ANN. § 1702.325(1) (West 2012).

- An officer, employee, or agent of a common carrier while protecting the carrier. TEX. OCC. CODE ANN. § 1702.325(2) (West 2012).

- An entity that provides medical alert services for sick or disabled people. TEX. OCC. CODE ANN. § 1702.326(a) (West 2012).

- A nonprofit business or civic organization that employs a peace officer under certain circumstances. TEX. OCC. CODE ANN. § 1702.327(1) (West 2012).

- A charitable, nonprofit organization that maintains a system of records to aid in locating missing children. TEX. OCC. CODE ANN. § 1702.327(2) (West 2012).

- A person who owns and installs a burglar detection or alarm device on his own property, or on someone else's property if he does not charge a fee. TEX. OCC. CODE ANN. § 1702.328(1) (West 2012).

- A person in the business of building construction that installs electrical wiring and devices that may include in part the installation of a burglar alarm or detection device. TEX. OCC. CODE ANN. § 1702.328(1) (West 2012).

- A person who sells or installs automobile burglar alarm devices. TEX. OCC. CODE ANN. § 1702.328(3) (West 2012).

- A person who sells exclusively by e-commerce, over the counter transactions, or mail order, alarm systems, electronic access control devices, locks, or detection devices. TEX. OCC. CODE ANN. § 1702.328(4) (West 2012).

- A person whose activities are regulated under Article 5.43-2 of the insurance code. TEX. OCC. CODE ANN. § 1702.329(1) (West 2012).

- A person who holds a license to practice as an electrician and who installs fire or smoke detectors in single- or multi-family residences. TEX. OCC. CODE ANN. § 1702.329(2) (West 2012).

- A person employed full time and commissioned as a campus security personnel employee by a private institution of higher education. TEX. OCC. CODE ANN. § 1702.330(1) (West 2012).

- A peace officer commissioned by an unincorporated municipality who is hired under the education code on a regular basis by a private institution of higher education. TEX. OCC. CODE ANN. § 1702.330(2) (West 2012).

- An alarm systems company that sells, installs, services, monitors, or responds to only personal emergency response systems. TEX. OCC. CODE ANN. § 1702.331(b)(1) (West 2012).

- An alarm systems installer who installs, maintains, or repairs only personal emergency response systems. TEX. OCC. CODE ANN. § 1702.331(b) (West 2012).

- A manager of an alarm systems company. TEX. OCC. CODE ANN. § 1702.331(3) (West 2012).

- A security salesperson employed by an alarm systems company. TEX. OCC. CODE ANN. § 1702.331(4) (West 2012).

- An owner, officer, partner, or shareholder of an alarm systems company. TEX. OCC. CODE ANN. § 1702.33(5) (West 2012).

- A person who provides a telematics service. TEX. OCC. CODE ANN. § 1702.332(b) (West 2012).

Having to plead the negation of each of these exceptions in the indictment would obviously be unnecessarily time consuming, but the more complicating result would be satisfying the requirement that the State prove beyond a reasonable doubt that appellant did not fall within any of these exceptions. TEX. PEN. CODE ANN. § 2.02 (West 2011) (requiring State to plead *and prove* exceptions).

If the Sate were required to prove appellant did not fall into any of the exceptions, a trial under the Private Security Act would devolve into a lengthy presentation of evidence regarding otherwise meaningless topics about such diverse matters as the business of electronically monitoring parolees, manufactured resale equipment, debt collection businesses, repossession businesses, psychological testing businesses, licensed engineers, cattle associations, landmen, insurance adjusters, licensed accountants, social work, automobile clubs, electricians, private institutions of higher education, telematics, and whether appellant owns and installed an alarm device in his own home or possibly installed one in someone else's home.

It would be absurd to interpret section 2.02 as requiring the State to investigate these forty-plus possible exceptions and then present evidence on each one to prove beyond a reasonable doubt that appellant did not fall within any of the described exceptions, particularly when the alternative is to have the defendant (who has actual knowledge of whether he falls within any of these categories) identify and present evidence on the exception that applies to him. *Arias*, 477 S.W.3d at 929 (the State is generally not required to negate as an element of the offense matters peculiarly within the defendant's knowledge); *Bragg v. State*, 740 S.W.2d 574, 576 (Tex. App.--Houston [1st Dist.] 1987, pet. ref'd) ("it is unreasonable to expect an indictment to include negations of 18 situations in which the offense does not apply"). By placing the responsibility of addressing the possible exceptions on the defendant, the jury hears evidence of the single relevant exception and is not bombarded with literally dozens of irrelevant exceptions. Since appellant's interpretation would produce an absurd result, it should be rejected and the court of appeals's application of section 2.02 should be affirmed.

Accordingly, for these various alternative reasons, the court of appeals did not err in its application of section 2.02.

## CONCLUSION

It is respectfully requested that the court of appeals's judgment be affirmed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ Dan McCrory
**DAN McCRORY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 274-5826
TBC No. 13489950
McCrory_Daniel@dao.hctx.net

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing instrument has been mailed to

the following email addresses via TexFile:

Michael D. Gillespie
Attorney at Law
226sheldon@gmail.com


Lisa C. McMinn
State Prosecuting Attorney
Lisa.McMinn@SPA.texas.gov


/s/ Dan McCrory
**DAN McCRORY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 274-5826
TBC No. 13489950

29

# CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document has a word count of 5,948 words, based upon the representation provided by the word processing program that was used to create the document.

/s/ Dan McCrory
**DAN McCRORY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 274-5826
TBC No. 13489950

Date: 5/20/2016